UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DARCY ANNE ZAPIEN,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

CASE NO. 2:18-cv-00482-BAT

**ORDER AFFIRMING AND DISMISSING WITH PREJUDICE**

Plaintiff seeks review of the denial of her application for disability benefits. She contends the Administrative Law Judge (ALJ) failed to include all physical limitations in the residual functional capacity (RFC), failed to properly evaluate her symptom testimony; failed in his step five findings; and, failed to give appropriate weight to medical testimony. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff protectively filed a Title II application on December 10, 2014. Tr. 170. Her application was denied at the initial and reconsideration levels. Tr. 118, 122. A hearing was held on December 13, 2016 before ALJ Wayne N. Araki. Tr. 35. On April 17, 2017, the ALJ issued an unfavorable decision. Tr. 18-30.

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 1

Utilizing the five-step disability evaluation process,[1] at step one, the ALJ found that Plaintiff met the insured status through December 31, 2019; and has not engaged in substantial gainful activity since her alleged onset date of December 5, 2014. Tr. 20. At step two, the ALJ found Plaintiff suffers from depressive disorder; anxiety disorder; fibromyalgia; obesity; and right shoulder tendonitis. Tr. 20. At step three, the ALJ found these severe impairments alone or in combination do not meet or equal the severity as defined in the medical listings in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 20.

The ALJ found Plaintiff has the RFC to perform sedentary work except she can lift and carry less than 10 pounds frequently; she can stand and/or walk in 15-minute intervals for a total of 2 hours in an 8-hour day. She can sit for 2-hour intervals for a total of 8 hours in an 8-hour day with brief stretch breaks as needed, in addition to normal breaks. She can occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should not work at unprotected heights or operate heavy equipment; she can have occasional exposure to vibration; frequently finger and handle; have occasional superficial interactions with general public and occasional interaction with co-workers or supervisors. She should not be assigned job tasks that require assistance of others for completion but could tolerate occasional assistance. Tr. 22.

At step four, the ALJ found Plaintiff does not have the RFC to perform her past relevant work, but based on the testimony of the vocational expert and considering Plaintiff's age, education and work experience, at step five, the ALJ determined Plaintiff is capable of making adjustment to other work that exists in significant numbers in the national economy and, therefore is not disabled. Tr. 28, 29.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 2

The Appeals Council denied Plaintiff's request for review on November 24, 2017 making the ALJ decision final. Plaintiff brings this action for judicial review pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

**A.     The ALJ Did Not Err in His Determination of Plaintiff's RFC**

Plaintiff contends that although the ALJ identified her right shoulder tendonitis as a severe impairment, he failed to consider limitations caused by this condition when he formulated the RFC. Dkt. 10 at 6. In particular, she argues the ALJ ignored her testimony that her pain increases when she uses her left shoulder or right arm and that these shoulder limitations are not captured in a sedentary RFC. Dkt. 14 at 2.

The RFC finding represents the most a claimant can do despite her limitations. SSR 96-8p, 1996 WL 374184, at *1. The ALJ makes this finding before proceeding to steps four and five of the sequential evaluation process. 20 C.F.R. §§ 404.1545, 416.945. An ALJ is required to "assess a claimant's residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The ALJ found right shoulder tendonitis was a "severe" impairment at step two. Tr. 20. He noted that imaging of the right shoulder in 2015 showed severe tendinosis but that Plaintiff's clinical presentation does not suggest more restrictions than those included in the RFC. Tr. 24. For example, the ALJ noted that while some rheumatology notes indicate reports of tenderness and reduced range of motion in both shoulders and elbows, other rheumatology notes show a largely unremarkable presentation with no obvious range of motion restrictions in the shoulders or elbows, no swelling, tenderness, or synovitis in the joints and no sensory abnormalities or neurological deficits; plaintiff typically presented in no acute distress; she denied muscle

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 3

weakness, and consistently presented with full strength in the upper extremities. The ALJ further noted that subsequent notes from pain management provider Dr. McQueen through late 2016 contain few, if any, clinical findings (such a[s] range of motion deficits or weakness) indicative of limitations in the upper extremities. Tr. 25 (internal citations omitted).

Plaintiff argues that an RFC including shoulder limitations would be "consistent with numerous medical assessments over time showing decreased range of motion, tender points and pain on flexion/extension." Dkt. 14 at 3. She cites to numerous records, but does not explain how these records are inconsistent with the ALJ conclusion that Plaintiff's clinical presentation does not suggest more restrictions than those included in the RFC. The Court's review of the records cited reveals that Plaintiff was seen in June 2014, April 2015, May 2015, November 2015, February 2016, and August 2016 with complaints of shoulder pain and while some examinations showed limited range of motion and tenderness to forced flexion, no acute synovitis was noted and Plaintiff's upper bilateral strength was intact. The only treatment prescribed included Voltaren gel as needed for joint pain and home exercises.

Thus, the ALJ did not ignore the issue of Plaintiff's right shoulder or err when he determined her RFC. Because Plaintiff showed good range of motion and strength during examinations, the ALJ concluded that Plaintiff's right shoulder pain was accommodated by limiting her to a range of sedentary work and further limitations were not required. Tr. 22. This was generally consistent with the opinion of the State agency non-examining physician, who found Plaintiff capable of light work without further manipulative limitations (noting Plaintiff's treatment for right shoulder pain after car accident). Tr. 110, 113-114. It was also consistent with the findings of consultative examiner A. Peter Weir, M.D., who found normal range of motion in all areas, including Plaintiff's shoulders. Tr. 25 (citing Tr. 302).

**B.    The ALJ Did Not Err in Determining Plaintiff's Credibility**

Revised Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *13, provides guidance on how adjudicators should evaluate a claimant's statements. SSR 16-3p is applicable to the ALJ's decision issued January 17, 2017, as adjudicators will apply SSR 16-3p in making decisions on or after March 28, 2016. 82 Fed. Reg. 49, 468. SSR 16-3p eliminates the use of the term "credibility" and instead focuses on an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work. SSR 16-3p does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony. To reject subjective complaints, an ALJ must provide "specific, cogent reasons" and, absent affirmative evidence of malingering, must reject a claimant's testimony for "clear and convincing" reasons. *Morgan v. Commissioner, SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *see Carmickle v. Commissioner*, SSA, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008).

Plaintiff testified that she cannot work on a consistent basis because of musculoskeletal pain and mental symptoms, including pain in her legs, knees, hips, back, elbows, and shoulders. She has difficulty walking and bending over; she cannot sit for extended periods or lift more than five pounds due to pain and weakness; and due to pain and swelling in her elbows, is restricted to 25 minutes of typing at a time with 30 minutes of resting in between. Plaintiff testified she has depression and anxiety, which worsens when she is in crowds. Plaintiff also testified she has poor sleep, has trouble getting up in the morning, and has to nap one to two hours per day. In addition, her medication causes drowsiness and fatigue, and she has poor concentration due to "fibro fog" from her fibromyalgia. Her anxiety and other symptoms worsened after the October 2014 car accident. Tr. 23.

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record and gave clear and convincing reasons for discounting Plaintiff's testimony. First, he found Plaintiff's testimony "was somewhat contradictory, which tends to create questions regarding the believability of her allegations." Tr. 23. In particular, the ALJ pointed to inconsistencies in Plaintiff's testimony regarding the receipt of unemployment insurance benefits and her ability to drive.

Plaintiff contends the ALJ erred in discounting her testimony based on the receipt of unemployment insurance benefits because receipt of such benefits is not inconsistent with an allegation of disability. Dkt. 10 at 8 (citing August 9, 2010 Memorandum from Chief Administrative Law Judge Frank Cristaudo to ALJs regarding SS Ruling 00-1C). However, the "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, the ALJ noted that Plaintiff received unemployment benefits during the relevant period and accepted them until they were exhausted and applied for jobs while receiving benefits. He further noted that while "[r]eceipt of such benefits is not by itself dispositive … in combination with the other evidence noted in this decision (including her contradictory statements regarding unemployment benefits), it creates questions regarding the believability of the claimant's report because, in order to obtain the payments, [she] had to certify, on a weekly basis, that she was ready, willing, able, and available to work." Tr. 26. The ALJ also observed contradictions in Plaintiff's testimony:

> When I noted that the claimant accepted unemployment benefits during the same period that she is alleging disability, she testified that she applied for Social Security disability because she was having difficulty sleeping. Such testimony does not seem consistent with her other testimony regarding an inability to work

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 6

> due to exertional and postural limitations due to pain.
>
> Also inconsistent with her allegations of disabling symptoms, the claimant stated that she applied for jobs while receiving unemployment benefits and would have taken one if offered to her. The claimant then changed her testimony when questioned by her attorney, stating that she would not have been able to work even if she had been offered a job.

Tr. 23-24. When Plaintiff received unemployment benefits, she told the State of Washington that she thought she could work, she applied for office work jobs like her past job, and she agreed she was apply for the "[s]ame type of work." Tr. 44. Thus, it was not error for the ALJ to discount her symptom testimony on this basis.

The ALJ also noted inconsistencies in Plaintiff's statements regarding her ability to drive and to go out alone due to increased anxiety after her October 2014 car accident. In December 2014, she reported that she could drive, go out alone, and shop in stores. Tr. 24 (citing Tr. 188). At the December 2016 hearing, Plaintiff testified that she does not drive at all and does not go out alone to the store due to anxiety. After further questioning, she said she had not driven for about one month but before that, she was driving every day. In February 2015, she said she did not drive anymore due to medication side effects. Tr. 24 (citing Tr. 295). In light of these varying statements, it was not unreasonable for the ALJ to discount Plaintiff's testimony. *See e.g.*, *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("To find the claimant not credible the ALJ [may] rely ... on internal contradictions in that testimony.").

The ALJ also noted that Plaintiff's reports to her treating providers are not entirely consistent with her allegations and are changeable. Tr. 24 (failing to mention medication side effects, few reports of having to nap two hours daily, little mention of leg, hip, knee, or elbow pain; some reports showing severe knee pain, many notes show few, if any, knee pain). This was not error. *See Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006) (upholding the ALJ's

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 7

finding that the claimant failed to report certain symptoms).

The ALJ also questioned Plaintiff's claims of pain in light of the examination findings. With regard to her right shoulder tendinosis, the ALJ noted that Plaintiff's clinical presentation does not suggest more restriction than those in the RFC. For example, while some rheumatology notes indicate tenderness and reduced range of motion in both shoulders and elbows, other rheumatology notes show a largely unremarkable presentation, with no obvious range of motion restrictions and no swelling, tenderness, or synovitis. Plaintiff typically presented in no acute distress and consistently presented with full strength in the upper extremities and notes from pain management providers through late 2016 contained few, if any, clinical findings of range of motion deficits or weakness indicative of limitations in the upper extremities. As to the lower extremities, apart from one finding of range of motion limitation in the back and one regarding the knees, Plaintiff presented with no range of motion deficits in the back, knees or hips, consistently demonstrated a normal gait, had no significant strength or sensation deficits or other neurological abnormalities, presented in no acute distress, and exhibited no obvious problems with sitting. Tr. 25.

During her evaluation with Dr. Weir, Plaintiff reported persistent pain all over her body, especially her arms and legs, but Dr. Weir recorded entirely normal findings – normal range of motion in all areas, including her shoulders, back, knees, wrists, forearms, and hands. In addition, she had normal gait; exhibited no pain behavior and no problems sitting or moving about the room; she had no muscle atrophy; exhibited normal sensation and strength throughout (including normal pinch and grip strength and normal strength in biceps and triceps); and was able to stand on her toes and heels and stand on one leg and squat. Tr. 25. And while the ALJ agreed that fibromyalgia was at least a "severe" impairment at step two, the examining

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 8

physician, Dr. Weir, suggested that Plaintiff did not meet the requirements for this condition and did not have any significant limitations. Tr. 304. Plaintiff's treating provider described her pain as "mild" and controlled on medication. Tr. 338.

The ALJ also noted that with regard to Plaintiff's depression and anxiety, the examination findings were fairly benign. Tr. 26. Plaintiff performed well on tests of her cognitive functioning (Tr. 297) and despite claims of mental health difficulties, she showed few signs of difficulty during treatment sessions (Tr. 306, 313 (noting insomnia was improved), Tr. 359 (observing that Plaintiff was anxious), Tr. 356, 359, 372-374, 413 (noting a bright affect)).

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Thus, it was not error for the ALJ to question Plaintiff's claims of pain in light of the examination findings.

Finally, Plaintiff contends that the ALJ's finding that her complaints of pain are not credible conflicts with the ALJ's rejection of Dr. Weir's opinion that she did not have any significant function restrictions. *See* Dkt. 10 at 12 (citing Tr. 304). The Court disagrees that these findings are internally inconsistent. The ALJ accorded little weight to Dr. Weir's opinion because the overall record indicated Plaintiff had greater function restrictions than none at all. Tr. 28. Finding that Plaintiff's complaints of pain are not entirely consistent with the evidence does not mean the ALJ must also find that Plaintiff has *no* significant function restrictions. The ALJ reasonably evaluated the evidence to determine the extent to which the evidence *and* Plaintiff's reported pain and symptoms could reasonably be expected to limit her functional limitations.

1     Because the ALJ's assessment of Plaintiff's testimony was supported by specific, clear, and convincing reasons, the Court affirms the ALJ. Additionally, "[w]hen evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

**C.     The ALJ Did Not Err in Step Five Finding**

    Plaintiff contends the ALJ erred in his step five finding because the hypothetical question upon which the ALJ relied did not comprehensively described Plaintiff's limitations. Dkt. 10 at 13. He failed to define the number of "brief stretch breaks as needed" and did not include the full extent of Plaintiff's physical limitations for reaching related to her severe shoulder tendonitis. *Id.* In addition, the job of assembler (with alternate title of table worker) is identified for light work, not sedentary, as the ALJ's RFC assessment provided. Dkt. 10 at 14.

    At step five of the sequential evaluation process, the ALJ determines whether the claimant is capable of performing other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(v). The ALJ may determine that sufficient jobs exist by relying on the testimony of a vocational expert, 20 C.F.R. § 416.966(e), or by relying on the Medical Vocational Guidelines, 20 C.F.R. § 416.966(d).

    As previously noted, the ALJ properly accounted for all of Plaintiff's physical impairments in his determination of her RFC. Therefore, because the "hypothetical that the ALJ posed to the [vocational expert] contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's reliance on testimony the [vocational expert] gave in response to the hypothetical therefore was proper." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

ORDER AFFIRMING AND DISMISSING WITH PREJUDICE - 10

The ALJ asked the vocational expert if a person who required "short stretch breaks" would be able to perform the various occupations at issue. Tr. 80. The expert explained that short breaks of a few minutes would be tolerated. Tr. 80. This exchange clarified any ambiguity with respect to the ALJ's residual functional capacity, and the vocational expert testimony was sufficiently clear to support the ALJ's step five finding.

Finally, assuming the job of assembler (table worker) is not a viable position for Plaintiff because it does not fall within the ALJ's RFC, the vocational expert identified at least three other jobs existing in significant numbers in the national economy.

Accordingly, the ALJ did not err in the step five sequential evaluation process.

**D.     The ALJ Did Not Err in Weight Given to Medical Opinions**

An ALJ may reject the controverted opinions of a physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss*, 427 F.3d at 1216. An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

<u>Anselm M. Parlatore, M.D.</u>

On February 24, 2015, examining psychiatrist Anselm M. Parlatore, M.D., diagnosed Plaintiff with depression and anxiety. He opined that she has the ability to reason and understand and her memory, concentration, pace and persistence are all organically/cognitively intact, but her social interaction and adaptation are markedly affected. Tr. 297-298. He noted that she "does simple, repetitive domestic chores with help from her family, but has not been able to function with peers, supervisors or the general public." Tr. 298. The ALJ gave partial weight to Dr. Parlatore's opinion that Plaintiff's memory, concentration, pace, and persistence were all intact

as this portion of the opinion is consistent with the doctor's examination findings and with Plaintiff's presentation in most treatment notes. Tr. 27. The ALJ discounted that portion of Dr. Parlatore's opinion that Plaintiff is markedly restricted in social function and adaptation. The question here is whether the ALJ gave specific and legitimate reasons to discount this portion of Dr. Parlatore's opinion and the Court concludes that he did.

First, the ALJ noted that Dr. Parlatore's opinion about marked social limitations was not consistent with the doctor's own examination or with the treatment record. Tr. 27. During Dr. Parlatore's examination, Plaintiff was pleasant and coherent, although sad and restricted in affect. Tr. 297. The ALJ noted that the treatment record showed few signs of social limitations. Tr. 26. *See e.g., Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d at 601 (noting among other points that the claimant was engaging and cooperative in treatment visits).

The ALJ also noted that Dr. Parlatore did not consider other treatment records when giving his opinion. Tr. 27. This is an appropriate factor for the ALJ to consider, even if it may not be a sufficient reason, by itself, to discount the doctor's opinions. *See* 20 C.F.R. § 404.1527(c)(6) (The ALJ will consider "the extent to which a medical source is familiar with the other information in your case record.").

Christopher Noell, M.D.

Plaintiff did not attend specialized mental health treatment until September 2015, when she started seeing psychiatrist, Dr. Noell, who wrote that Plaintiff has severe limitations due to mental illness and that she suffered symptoms such as psychosis, paranoia, and disassociation. Tr. 436-41. The ALJ noted that, "[a]lthough treating provider opinions are usually afforded more weight, I give little weight here because the rather profound restrictions indicated by Dr. Noell are not consistent with the record as a whole." Tr. 27. While Dr. Noell indicated Plaintiff would

not be able to meet competitive standards in the ability to complete a normal workday and perform at a consistent pace due to her paranoia and disassociation, the ALJ concluded "[Dr. Noell's] mostly illegible treatment notes do not seem to contain objective findings indicative of such restrictions due to paranoia and disassociation (8F)." Tr. 27. The ALJ also noted that Plaintiff made significant claims to Dr. Noell of hallucinations and other severe symptoms of mental illness (Tr. 26, Tr. 358 (underlying records)); however, Dr. Noell saw relatively little evidence of these during Plaintiff's appointments, apart from an anxious affect and intermittent tearfulness. In addition, Plaintiff made no mention of such symptoms during the hearing, and the overall treatment record and Dr. Parlatore's findings suggest little to no limitation due to paranoia, disassociation, or any other mental symptoms "severe enough to prevent her from attending work for more than four days each month, as opined by Dr. Noell." Tr. 27.

Plaintiff argues that the ALJ should have obtained legible copies of Dr. Noell's treatment notes because it would "be impossible to make an assumption about objective findings if you could not read them." The Court does not find this argument persuasive. While some of Dr. Noell's notes are difficult to read, they are legible.

In conclusion, the ALJ gave specific and legitimate reasons to discount Dr. Noell's opinions and therefore, did not err in giving Dr. Noell's opinion little weight.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 31st day of August, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge